# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

         Plaintiff,

   vs.

DELOITTE & TOUCHE LLP,

         Defendant.

Civil Action No: 1:14-cv-23713-UU

**DELOITTE & TOUCHE LLP'S MOTION TO STRIKE OR,
IN THE ALTERNATIVE, TO DISMISS THE AMENDED
COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ...........................................................................................................................3

      A.     The Collusive Fraud At TBW And Colonial Bank....................................3

      B.     Deloitte's Role As Independent Auditor....................................................4

      C.     Freddie Mac's Awareness Of Risks And Fraud .......................................5

      D.     Freddie Mac's Claim Against Deloitte ......................................................6

MEMORANDUM OF LAW ..........................................................................................................6

    I.     FREDDIE MAC DID NOT SEEK LEAVE TO AMEND .......................................6

    II.    FREDDIE MAC DOES NOT ADEQUATELY ALLEGE A FACTUAL
         BASIS FOR PUNITIVE DAMAGES ......................................................................8

      A.     "Gross Negligence" Is A Rigorous Standard..............................................8

      B.     Freddie Mac Fails To Plead Gross Negligence As To Deloitte's
            Audit Work On The Sale Of Loans To Colonial Bank..............................9

      C.     Freddie Mac Fails To Plead Gross Negligence As To  Deloitte's
            Audit Work On Mortgage Servicing Rights .............................................12

      D.     Freddie Mac Fails To Plead Gross Negligence As To Deloitte's
            Audit Work Relating To Ocala Funding.....................................................13

      E.     Freddie Mac Fails To Plead Gross Negligence As To Deloitte's
            Audit Work Relating To Revenue Recognition.........................................14

      F.     Freddie Mac Fails To Plead Gross Negligence As To Deloitte's
            Audit Work Relating To TBW's Loan-Related Allowances....................16

    III.    FREDDIE MAC FAILS TO PLEAD WITH PARTICULARITY CLAIMS
         FOR NEGLIGENT MISREPRESENTATION RELATING TO
         DELOITTE's 2002, 2003, 2004, AND 2005 AUDIT OPINIONS.......................18

CONCLUSION.............................................................................................................................20

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  No. 11-CIV-2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) .................................................. 11, 14

*Chang v. JPMorgan Chase Bank, N.A.*,
  No. 1:14-cv-20368-KMM, 2014 WL 7564668 (S.D. Fla. Dec. 8, 2014) ............................................ 9

*In re Colonial Bancgroup, Inc. Sec. Litig.*,
  No. 2:09-cv-104, 2013 WL 4788627 (M.D. Ala. Sept. 9, 2013) ....................................................... 17

*Costa v. Celebrity Cruises, Inc.*,
  768 F. Supp. 2d 1237 (S.D. Fla. 2011), *aff'd*, 470 F. App'x 726 (11th Cir. 2012) ............................ 20

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) .......................................................................................................... 1

*DeLollis v. Friedberg, Smith & Co.*,
  933 F. Supp. 2d 354 (D. Conn. 2013) ............................................................................................... 12

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir.), *cert. denied*, 498 U.S. 941 (1990) ............................................................. 19

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ............................................................................................................. 16

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) .............................................................................................................. 17

*Goldman v. MacMahan, Brafman, Morgan & Co.*,
  706 F. Supp. 256 (S.D.N.Y. 1989) .................................................................................................... 16

*Griffith v. Shamrock Vill., Inc.*,
  94 So. 2d 854 (Fla. 1957) ............................................................................................................. 9, 11

*Grynberg v. Ernst & Young LLP*,
  323 F. Supp. 2d 1152 (D. Wyo. 2004) ............................................................................................... 4

*Halmos v. Bombardier Aerospace Corp.*,
  404 F. App'x 376 (11th Cir. 2010) ..................................................................................................... 1

*In re Jiangbo Pharm., Inc., Sec. Litig.*,
  884 F. Supp. 2d 1243 (S.D. Fla. 2012) .......................................................................................... 10, 11

*Kaufman v. Wyeth*,
  No. 02-22692-CIV, 2011 WL 10483568 (S.D. Fla. Apr. 12, 2011) .......................................... 8, 16, 18

iii

*Koch v. Koch Indus., Inc.*,
  2 F. Supp. 2d 1385 (D. Kan.), *clarified on denial of reconsideration*, 6 F. Supp. 2d
  1207 (D. Kan. 1998) .................................................................................................... 11

*Lamm v. State Street Bank & Trust*,
  749 F.3d 938 (11th Cir. 2014) ............................................................................... 2, 18

*Lamm v. State Street Bank & Trust Co.*,
  889 F. Supp. 2d 1321 (S.D. Fla. 2012) ........................................................................ 9

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) ............................................................................... 20

*Long v. Slaton*,
  508 F.3d 576 (11th Cir. 2007) ...................................................................................... 5

*Murdeshwar v. Search Media Holdings Ltd.*,
  No. 11-CIV-20549, 2011 WL 7704347 (S.D. Fla. Aug. 8, 2011) ................................ 1

*In re The One Bancorp Sec. Litig.*,
  135 F.R.D. 9 (D. Me. 1991) ....................................................................................... 16

*Pleasant Valley Biofuels v. Sanchez-Medina LLP*,
  No. 13–23046–CIV, 2013 WL 6842533 (S.D. Fla. Dec. 27, 2013) ........................ 9, 10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004) ........................................................................... 12

*Russell v. Dalby*,
  573 So. 2d 133 (Fla. Dist. Ct. App. 1991) .............................................................. 9, 11

*Ryan v. Aina*,
  222 F. App'x 801 (11th Cir. 2006) ............................................................................... 7

*Schick v. Ernst & Young*,
  141 F.R.D. 23 (S.D.N.Y. 1992) .................................................................................. 16

*SEC v. Price Waterhouse*,
  797 F. Supp. 1217 (S.D.N.Y. 1992) ........................................................................... 11

*SIG, Inc. v. AT&T Digital Life, Inc.*,
  971 F. Supp. 2d 1178 (S.D. Fla. 2013) ...................................................................... 16

*In re Software Toolworks Inc. Sec. Litig.*,
  50 F.3d 615 (9th Cir. 1994) ....................................................................................... 11

*Sosa v. Airprint Sys., Inc.*,
  133 F.3d 1417 (11th Cir. 1998) .................................................................................... 8

*In re Sunterra Corp. Sec. Litig.*,
  199 F. Supp. 2d 1308 (M.D. Fla. 2002) ..................................................................... 11

iv

*Tiger Golf Point v. Hipple*,
  977 So. 2d 608 (Fla. Dist. Ct. App. 2007) ................................................................. 8

*Weinberger v. Kendrick*,
  451 F. Supp. 79 (S.D.N.Y. 1978) ............................................................................ 20

*White Constr. Co. v. Dupont*,
  455 So. 2d 1026 (Fla. 1984) .................................................................................... 9

*In re Williams Sec. Litig.*,
  496 F. Supp. 2d 1195 (N.D. Okla. 2007) ................................................................ 16

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) .................................................................................. 11

*Zucker v. Sasaki*,
  963 F. Supp. 301 (S.D.N.Y. 1997) .......................................................................... 11

## STATUTES

Fla. Stat. § 768.72(2)(b) ................................................................................................ 2, 8

Ga. Code § 16-5-60(b) .............................................................................................. 10, 11

## RULES

Fed. R. Civ. P.
  9 ................................................................................................................................ 6
  9(b) ..................................................................................................................... *passim*
  12 .............................................................................................................................. 6
  15 .............................................................................................................................. 6
  15(a) ....................................................................................................................... 1, 7
  15(a)(1) ..................................................................................................................... 8
  15(a)(1)(B) ................................................................................................................ 6
  15(a)(2) ..................................................................................................................... 6
  16 .............................................................................................................................. 8
  16(b)(4) ..................................................................................................................... 7

Local Rule 7.1(b)(2) ................................................................................................... 20

Defendant Deloitte & Touche LLP ("Deloitte") respectfully moves to strike the Amended Complaint ("AC") by Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac"), or in the alternative, to strike or dismiss the request for punitive damages and to dismiss all claims relating to Deloitte's audit opinions for fiscal years 2002 - 2005.[1]

## PRELIMINARY STATEMENT

Freddie Mac has filed an Amended Complaint, adding a few new allegations and a new request for punitive damages.  This attempt to amend is both procedurally improper and substantively meritless, and Deloitte moves to strike or dismiss on three grounds.

First, Freddie Mac has not sought leave to amend, as Rule 15(a) requires—given that the time to amend without consent has passed.  Instead, in the motion to seal filed in conjunction with its Amended Complaint, Freddie Mac suggested that Deloitte consented to the Amendment, despite repeatedly being advised to the contrary, both before and after its filing.  As shown in Section I below, Freddie Mac's failure to seek leave warrants striking the Amended Complaint.

Second, Deloitte moves to strike or dismiss Freddie Mac's request for punitive damages because Freddie Mac has failed to plead facts warranting such extraordinary relief.  To assert a claim for punitive damages, Freddie Mac must allege facts showing that Deloitte was "grossly negligent" in its audits—a rigorous standard defined in Florida as conduct "so reckless or

---

[1] Deloitte respectfully submits herewith the Declaration of Christopher S. Turner in support ("Turner Declaration" or "Turner Decl.").  Exhibits to the Turner Declaration shall be designated "Ex. __."  On a motion to dismiss, a "court may consider . . . documents incorporated by reference into the complaint and matters of which a court may take judicial notice." *Murdeshwar v. Search Media Holdings Ltd.*, No. 11-CIV-20549, 2011 WL 7704347, at *9 (S.D. Fla. Aug. 8, 2011) (Ungaro, J.); *see also Halmos v. Bombardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (same as to "matters of public record"); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same).  The exhibits to the Turner Declaration were incorporated by reference into the complaint or are matters of public record and thus may be considered by the Court.

wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fla. Stat. § 768.72(2)(b). This standard is even more stringent in cases of alleged financial injury, as Freddie Mac must plead facts establishing that Deloitte displayed not the "slightest degree of care" in performing its professional duties. As shown in Section II below, Freddie Mac has fallen well short of meeting this pleading burden. To the extent that Freddie Mac takes issue with Deloitte's conduct, the Amended Complaint alleges nothing more than Freddie Mac's disagreement with Deloitte's professional judgments, alleging that Deloitte (i) *should have* identified particular accounting issues or inconsistences; (ii) mistakenly selected certain audit procedures to perform;[2] and (iii) mistakenly accepted management's explanations in response to certain audit questions. None of these allegations suffice to establish gross negligence. Indeed, the Amended Complaint's own allegations establish that Deloitte obtained and evaluated substantial audit evidence in rendering its opinions, negating any claim that Deloitte failed to exercise the "slightest degree of care" as required to support punitive damages under Florida law.

Third, Deloitte moves to dismiss Freddie Mac's claims related to Deloitte's audit opinions for fiscal years 2002 - 2005 because Freddie Mac fails to allege any misrepresentations for those years with the particularity required under Rule 9(b). *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950-51 (11th Cir. 2014). Since the filing of Freddie Mac's original complaint, Deloitte has produced to Freddie Mac workpapers for its 2002 - 2005 audits. Nonetheless, the Amended Complaint does not allege with any particularity how Deloitte's audit opinions for 2002 - 2005 were false—*i.e.*, for each year, how TBW's financial statements

---

[2] The deficiency of Freddie Mac's pleading on this point is particularly acute, as Freddie Mac has not identified any professional auditing standards requiring different procedures.

violated GAAP, and how Deloitte's audits violated GAAS.[3]  Indeed, as shown in Section III below, dismissal is warranted because, despite having access to the relevant documents and months to prepare its Amended Complaint, Freddie Mac has failed to allege any facts at all about Deloitte's audit work for fiscal years 2002 – 2005, much less with the particularity required by Rule 9(b).

## BACKGROUND

### A.    The Collusive Fraud At TBW And Colonial Bank

Prior to its demise in August 2009, TBW was one of the nation's largest originators of residential mortgages.   AC ¶¶ 25-26.   Third-party end investors, including Freddie Mac, purchased whole loans or pools of loans originated by TBW, either directly from TBW or through state-chartered and federally-regulated Colonial Bank.  *Id.*  In 2005, TBW created Ocala Funding, LLC ("Ocala Funding") as a special warehouse finance subsidiary, *id.* ¶ 44, to provide financing prior to the end investor sales.

Freddie Mac alleges that from 2002 through 2009, TBW and Colonial Bank were engaged in a collusive fraud that shifted over time.  *Id.* ¶¶ 48-57.  In 2002 and 2003, senior executives at TBW and personnel at Colonial Bank conspired to conceal overdrafts in TBW accounts, and starting in late 2003, TBW sold interests in fake or double-pledged loans to Colonial Bank on its COLB and AOT lines.  To avoid discovery by interested parties, including Deloitte, the fraudsters coordinated with each other to hide their activities and evolved their scheme in new ways to evade detection.  *Id.*  This effort succeeded for seven years; many parties, including auditors, regulators, and counterparties of TBW and Colonial Bank, failed to uncover the fraud.

---

[3] GAAP refers to Generally Accepted Accounting Principles, and GAAS refers to Generally Accepted Auditing Standards.  AC ¶¶ 4-5.  "AU _" refers to specific codified sections of GAAS.

### B.      Deloitte's Role As Independent Auditor

Deloitte audited TBW's consolidated financial statements for the fiscal years ended April 30, 2002, through April 30, 2008, and issued unqualified audit opinions, which accompanied TBW's annual consolidated financial statements.  AC ¶ 8.   The preparation of these financial statements was the responsibility of TBW's management.  Ex. B, AU 110.03; Ex. C, Deloitte Independent Auditors' Report dated July 29, 2008 at 3 (stating that the "financial statements are the responsibility of the Company's management" and Deloitte's "responsibility is to express an opinion on these financial statements based on our audits"); *Grynberg v. Ernst & Young LLP*, 323 F. Supp. 2d 1152, 1157 (D. Wyo. 2004).   As Deloitte's audit opinions made clear, they provided only "reasonable assurance" that the company's consolidated financial statements were correct in all material respects.  Ex. C, Deloitte Independent Auditors' Report dated July 29, 2008 at 3; *see also* Ex. B, AU 110.01–.02.  Further, Deloitte was not engaged to audit Ocala Funding's financial statements.[4]   Nor was Deloitte, unlike Freddie Mac, advised of fraud at TBW.  Indeed, professional auditing standards reflect that the type of fraud at TBW—involving collusion between a highly regulated third-party bank and individuals at the highest level of company management, who have since been convicted of, or pled guilty to, *inter alia*, the charge of lying to their auditors—is very difficult for an auditor to detect.  Ex. D, AU 316.10.[5]

---

[4] Although consolidating financial information for Ocala Funding was presented in supplemental schedules to TBW's audited financial statements for 2007 and 2008, Deloitte's audit reports made clear that "[t]he supplemental schedules are presented for the purpose of additional analysis and are not a required part of the basic 2008 consolidated financial statements."  Ex. C, Deloitte Independent Auditors' Report dated July 29, 2008 at 3.

[5] Indeed, the elusiveness of the complex and collusive fraud between TBW and Colonial Bank is illustrated by the large number of other sophisticated businesses and regulators who did not detect it.  *See, e.g.*, Ex. E, FHFA-OIG, Systemic Inspection Report: TBW-Colonial Investigation Lessons Learned at 7 (Aug. 21, 2014) ("FHFA-OIG TBW Report") ("In TBW's case, Fannie Mae, Freddie Mac, and Ginnie Mae each performed some level of oversight monitoring, and each encountered or should have encountered issues of concern.").

### C.      Freddie Mac's Awareness Of Risks And Fraud

Freddie Mac's own regulator (the Office of Inspector General of the Federal Housing Finance Agency ("FHFA-OIG")) recently issued a report detailing its investigative findings regarding the collusive fraud perpetrated by Colonial Bank and TBW—and Freddie Mac's involvement in that history.  Ex. E, FHFA-OIG, Systemic Inspection Report: TBW-Colonial Investigation Lessons Learned at 3 (Aug. 21, 2014) ("FHFA-OIG TBW Report").[6]  Between 2002 and 2009, Freddie Mac purchased more loans originated by TBW than any other end investor and enjoyed a self-described "special relationship" with TBW.  Ex. E, FHFA-OIG TBW Report at 7.  In the course of that relationship, Freddie Mac received *explicit warnings of fraud at TBW* on at least two separate occasions—in March 2007 when it received a *qui tam* complaint alleging fraud on Freddie Mac by TBW,[7] and in June 2008 when Freddie Mac's regulator OFHEO and then-conservator FHFA received a tip that TBW was selling fake loans to finance its operations.[8]  The FHFA inspector general concluded that these "serious allegations of fraud" were not "pursued to completion," FHFA-OIG TBW Report at 14, nor were they reported to Deloitte.   The inspector general further concluded that though "Freddie Mac was aware of circumstances that raised serious questions about TBW's capitalization, capacity, and compliance with repurchase obligations, it effectively waived its applicable guidance and allowed TBW to expand its business volume."  *Id*. at 10.  Nonetheless, Freddie Mac now seeks

---

[6] While the Court may take judicial notice of the FHFA-OIG's findings at this stage, *see Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (taking judicial notice of undisputed facts contained in a report from a state agency in reviewing an order on a motion to dismiss), it is not necessary to do so to grant Deloitte's motion; nonetheless, Deloitte highlights a few of the agency's findings to provide the Court with a more complete context.

[7] Ex. F, Compl., *United States ex rel. Friddle v. Taylor, Bean & Whitaker Mort. Corp.*, No. 1:06-cv-3023 (N.D. Ga. Dec. 12, 2006) (unsealed to Freddie Mac in March 2007).

[8] Ex. G, FHFA-OIG, AUD-2011-001: *Audit of the Federal Housing Finance Agency's Consumer Complaints Process* at 11 (June 21, 2011).

to blame TBW's auditors for the loss incurred when it decided to continue doing business with TBW, notwithstanding its awareness of these risks.

### D.       Freddie Mac's Claim Against Deloitte

Freddie Mac asserts claims for negligent misrepresentation against Deloitte arising out of its audit opinions on TBW's consolidated financial statements for fiscal years 2002 - 2008.  AC ¶¶ 7–11.  The unauthorized Amended Complaint adds factual allegations regarding Deloitte's fiscal years 2006 through 2008 audits, and a demand for punitive damages.  Deloitte now moves to strike or dismiss the Amended Complaint pursuant to Rules 9, 12, and 15 of the Federal Rules of Civil Procedure.

### <u>MEMORANDUM OF LAW</u>

## I.       FREDDIE MAC DID NOT SEEK LEAVE TO AMEND

The Court should strike the Amended Complaint because Freddie Mac has failed to comply with the Federal Rules of Civil Procedure, which require that Freddie Mac seek leave to amend.  After the defendant has filed a responsive pleading to an initial complaint, as Deloitte did here in filing its Answer to Freddie Mac's initial complaint on November 14, 2014 (Dkt. #16), the plaintiff may only amend without seeking leave of court if it does so within twenty-one days of the responsive pleading's service, Fed. R. Civ. P. 15(a)(1)(B), or if it receives the defendant's consent, Fed. R. Civ. P. 15(a)(2).  Freddie Mac has not satisfied either condition.

By December 1, 2014, only seven days remained for Freddie Mac to file an amended complaint without leave (four days remaining under the twenty-one day period plus three days for email service).  In the Joint Scheduling Report of that date, the parties agreed to extend the deadline in Rule 15(a)(1)(B) until the Court issued a protective order:  "Freddie Mac has prepared an amended complaint that it will file upon issuance of an appropriate protective order in this action, and Deloitte has agreed to a corresponding extension of the deadline to file the

amended complaint under Rule 15(a) without leave of court." Dkt. #23 at 2, 13. This Court signed the protective order on January 23, 2015, and the order was entered on January 26, 2015. Dkt. #37. Yet Freddie Mac did not, as promised, file its Amended Complaint "upon issuance of" the protective order on January 26th (or even seven or twenty-one days later). Instead, Freddie Mac waited until February 20, 2015 to file its Amended Complaint, by which time, under any measure, the twenty-one-day period to amend without leave had expired. Freddie Mac was therefore required to seek leave.

Freddie Mac has not done so. Nor, contrary to Freddie Mac's apparent representation to this Court, has Deloitte consented to Freddie Mac's amendment. Although Freddie Mac informed the Court that "Deloitte has advised that it does not oppose the filing of the Amended Complaint under seal," Dkt. #42 at 3, in fact, as Deloitte made clear, it consented only to the *sealing* of an Amended Complaint, and not to the amendment itself. Deloitte reaffirmed this position immediately after Freddie Mac filed its Amended Complaint and asked Freddie Mac to correct its representation to the Court, but Freddie Mac has not done so. Turner Decl. ¶¶ 3–4; Ex. A.

Because Freddie Mac failed to seek leave to amend, the Court should strike the Amended Complaint.[9] *Ryan v. Aina*, 222 F. App'x 801, 804 (11th Cir. 2006) (affirming district court's dismissal of amended complaint and holding that "[f]ailure to properly request leave to amend, when [plaintiff] had adequate opportunity and time to do so, precludes [plaintiff's] argument on

---

[9] Further, Freddie Mac cannot cure its pleading error by now moving to amend. The deadline has passed. Freddie Mac has acknowledged that deadline "may be modified only for good cause and with the judge's consent." Dkt. #40 at 3; *see* Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). Waiting nearly three months after announcing that the Amended Complaint was ready—and nearly one month after the protective order was issued—does not constitute the requisite diligence.

appeal that the district court abused its discretion" (quotation and citation omitted)).

## II.     FREDDIE MAC DOES NOT ADEQUATELY ALLEGE A FACTUAL BASIS FOR PUNITIVE DAMAGES

Beyond Freddie Mac's failure to comply with the requirements of Rule 15(a)(1), this Court should strike or dismiss Freddie Mac's demand for punitive damages because Freddie Mac has failed to meet its obligations under Florida law to allege facts demonstrating that Deloitte was grossly negligent.  *Compare* Fla. Stat. § 768.72(2)(b) *with* AC ¶¶ 99-202.[10]

### A.     "Gross Negligence" Is A Rigorous Standard

Punitive damages under Florida law require "gross negligence"—*i.e.*, conduct "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."  Fla. Stat. § 768.72(2)(b).  This statutory standard is a high bar:  "misconduct of a character no less culpable than what is necessary to convict of criminal manslaughter."  *Tiger Golf Point v. Hipple*, 977 So. 2d 608, 610 (Fla. Dist. Ct. App. 2007) (citing *White Constr. Co. v. Dupont*, 455 So. 2d 1026, 1028 (Fla. 1984)).[11]

Florida's gross negligence standard requires *actual knowledge* of the circumstances constituting the clear and present danger; allegations that a defendant "*should have known*" of those circumstances are insufficient.  *Lamm v. State Street Bank & Trust Co*., 889 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (emphasis added) ("Plaintiff's allegations at most establish that

---

[10] In addition to the five categories of allegations described below, Freddie Mac challenges Deloitte's June 2009 withdrawal from its audit.  AC ¶¶ 218-23.  However, Freddie Mac fails to identify any alleged financial statement error or misrepresentation resulting from Deloitte's alleged misconduct. *See, e.g.*, *Kaufman v. Wyeth*, No. 02-22692-CIV, 2011 WL 10483568, at *3-5 (S.D. Fla. Apr. 12, 2011) (Ungaro, J.) (dismissing for failure to plead how each alleged misrepresentation was "false" or inconsistent with "knowledge at the time").  As Freddie Mac concedes, Deloitte never issued an opinion on TBW's year-end 2009 financial statements.  *See, e.g.*, AC ¶¶ 8, 63 (citing Deloitte's audit opinions on TBW's financial statements for 2002 - 2008).

[11] The bar is so high that, to defendant's knowledge, no Florida appellate court has ever affirmed an award of punitive damages in an accounting malpractice case.

State Street should have known of the fraud, whereas gross negligence under both Florida and New York law requires a *conscious* disregard of one's duties." (emphasis in original)); *see also Chang v. JPMorgan Chase Bank, N.A.*, No. 1:14-cv-20368-KMM, 2014 WL 7564668, at *6 (S.D. Fla. Dec. 8, 2014) (dismissing claim for gross negligence under Florida law because defendant "had no knowledge of . . . fraudulent misappropriation" and thus "could not consciously disregard the consequences of [the] misappropriation if it did not actually know of [the] misappropriation").

In addition, if, as here, the claimed injury is financial rather than physical, plaintiff's "gross negligence" pleading burden is even higher: it must allege facts demonstrating that the defendant has failed to exercise "'*even the slightest degree of care.*'" *Pleasant Valley Biofuels v. Sanchez-Medina LLP*, No. 13–23046–CIV, 2013 WL 6842533, at *2-3 (S.D. Fla. Dec. 27, 2013) (emphasis added) (quoting *Russell v. Dalby*, 573 So. 2d 133, 134 (Fla. Dist. Ct. App. 1991); *Griffith v. Shamrock Vill., Inc.*, 94 So. 2d 854, 858 (Fla. 1957) (standard is "entire want of care or a want of slight care or attention by defendant to the duty it had assumed").

Indeed, what Florida defines as gross negligence (requiring "reckless" conduct and "conscious disregard") is similar to what many states call "recklessness." *See, e.g.*, Ga. Code § 16-5-60(b). It also resembles the pleading standard under the federal securities laws for claims against auditors. *See, e.g.*, *In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1267 (S.D. Fla. 2012) (requiring audit "so deficient that [it] amounted to no audit at all" (quotation and citation omitted)). Freddie Mac's allegations do not come close to clearing this high bar.

**B.    Freddie Mac Fails To Plead Gross Negligence As To Deloitte's Audit Work On The Sale Of Loans To Colonial Bank**

Regarding the sale of loans to Colonial Bank, Freddie Mac quibbles with Deloitte's audit judgment in (i) not obtaining "true sale" opinions for 2006 and 2007; and (ii) accepting TBW's

explanation that Colonial Bank paid for those loans in 2008 partially with cash and partially with a receivable. But the facts alleged negate the claim of gross negligence.

First, these are unquestionably judgmental issues. Freddie Mac does not allege—nor could it—that the prevailing accounting standard, Statement of Financial Accounting Standards No. 140 ("FAS 140"), requires a true sale opinion.[12] Likewise, there is no dispute that FAS 140, rather than requiring full cash payment, instead expressly allows for payment in "[c]ash, derivatives, or other assets." Ex. H, FAS 140, App'x E. The issues Freddie Mac raises are areas of professional judgment, amounting to disagreements about how Deloitte conducted its audit and reached its opinion. *See id.* ¶ 27 (leaving the consideration of evidence to the auditor's judgment). Freddie Mac's hindsight disagreement with Deloitte's judgment does not state a claim for gross negligence. Florida cases finding not the "slightest degree of care" involve the lack of any attempt to perform a duty—not the making of allegedly poor judgment calls.[13]

---

[12] The history of FAS 140 confirms that no legal opinion is required. The August 2005 FASB 140 Exposure Draft proposed adding a requirement for a legal opinion, but that proposal was never adopted. Ex. I, FASB 140 Exposure Draft at A11.

[13] *See, e.g.*, *Pleasant Valley*, 2013 WL 6842533, at *2-3 (escrow agent released funds even "though the conditions for disbursement … were never satisfied, … Defendant was even informed that the conditions were unsatisfied … [and] Defendant failed to notify Plaintiff that it had disbursed" the funds); *Russell*, 573 So. 2d at 134 (same); *Griffith*, 94 So. 2d at 855 (defendant admittedly made no effort to deliver message); *cf. In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) ("Deloitte's evidence indicating that the accounting decisions were reasonable negates the plaintiffs' attempt to establish scienter"); *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 628 (9th Cir. 1994) (finding that the plaintiffs have not satisfied the "no audit at all" standard where they provide no factual basis for these allegations of knowledge by Deloitte); *In re Jiangbo Pharm.*, 884 F. Supp. 2d at 1267 (finding that plaintiffs failed to establish that the audit amounted to "no audit at all"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-CIV-2279, 2012 WL 3758085, at *22 (S.D.N.Y. Aug. 29, 2012) (allegations questioning audit judgments fail to state claim that "no audit[] at all" was performed); *Zucker v. Sasaki*, 963 F. Supp. 301, 307-08 (S.D.N.Y. 1997) (alleged GAAP and GAAS violations fail to state claim that no audit at all was performed); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992) (holding that "no finding of fraud or recklessness can rationally be made" where the disputed "items involved complex issues of accounting as to which reasonable accountants could reach different conclusions").

Second, Freddie Mac's own allegations establish that Deloitte made significant efforts to address this issue.  Freddie Mac admits that Deloitte (i) planned its audit work to address FAS 140 concerns (*e.g.*, AC ¶¶ 27, 109, 116–21);[14] (ii) reviewed the agreements with Colonial Bank governing these sales (*id.* ¶¶ 120-21); (iii) spoke with management about the sales and terms of payment (*id.* ¶¶ 131-32);[15] (iv) reviewed true sale opinions (*id.* ¶ 118); and (v) consulted with internal specialists (*id.* ¶ 120).  These factual allegations cannot be reconciled with an assertion that Deloitte failed to exercise the "slightest degree of care."  *See* Section II(A) *supra*.  Rather than alleging that Deloitte performed "no audit at all," Freddie Mac merely attacks the "sufficien[cy]" (AC ¶ 135) of Deloitte's audit procedures, which cannot support a finding of gross negligence.  *See* Section II(A) *supra*.

Finally, although not necessary to grant this motion, the documents Freddie Mac chose to cite and rely upon actually reveal extensive support for Deloitte's audit judgments, undercutting even negligence.  Critically, Deloitte received signed confirmations from federally-regulated Colonial Bank, representing that Colonial Bank also treated these transactions as purchases under FAS 140 in its public, audited financial statements—and confirming the receivable owed

---

[14] Even accepting Freddie Mac's allegation that Deloitte had planned to receive true sale opinions in 2006 and 2007 (*see* AC ¶ 112), that optional step was not required under GAAP or GAAS, see note 12 *supra*, and Freddie's allegations demonstrate that the provision of legal opinions in 2008 did not change the analysis and judgment under FAS 140, *see* AC ¶ 118.

[15] Deloitte was entitled to rely on management representations.  Ex. B, AU 110.03; Ex. J, AU 333.02–.04.  *Cf. In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1338 (M.D. Fla. 2002) (stating that, in federal securities law actions, an auditor's reliance on client for provision of information "almost always [makes it] more difficult to establish scienter" (quotation and citation omitted)); *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1395 (D. Kan.) ("[A]n auditor's opinion is necessarily based in part on what management disclosed or failed to disclose to the auditor."), *clarified on denial of reconsideration*, 6 F. Supp. 2d 1207 (D. Kan. 1998); *Price Waterhouse*, 797 F. Supp. at 1230 (auditors reasonably relied upon management representations and had no basis to believe that they were being deceived).

11

when Colonial Bank purchased more loans than it had yet paid for in cash.[16]   These

confirmations negate any finding of negligence by Deloitte—much less gross negligence.  *See*

Ex. M, AU 326.08 ("Audit evidence is more reliable when it is obtained from knowledgeable

independent sources outside the entity"); Ex. N, AU 330.34 (same); *cf. DeLollis v. Friedberg,*

*Smith & Co.*, 933 F. Supp. 2d 354, 363 (D. Conn. 2013) (auditor's reliance on third-party

confirmations satisfies GAAS); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d

334, 389–90, 394–96 (D. Md. 2004) (same).

### C.   Freddie Mac Fails To Plead Gross Negligence As To  Deloitte's Audit Work On Mortgage Servicing Rights

Regarding TBW's accounting for its mortgage servicing rights ("MSRs"), Freddie Mac

alleges that (i) in 2006-07, Deloitte failed to notice a discrepancy between the amount of loans

sold to Colonial Bank versus the amount of mortgage servicing rights TBW retained; and (ii) in

2008, having noticed the discrepancy, Deloitte accepted management's explanation for it.  *See*

AC ¶¶ 137–58.  Neither of these allegations is sufficient to sustain a claim for gross negligence.

As to 2006 and 2007, Freddie Mac's assertion that Deloitte "should have" discovered this

"discrepancy" (AC ¶¶ 144-47) fails as a matter of law to allege gross negligence.  *See* Section

II(A) *supra*.   As to 2008, Freddie Mac simply argues, with the benefit of hindsight, that

Deloitte's audit judgment accepting TBW's explanation for the "discrepancy" was unreasonable.

As noted above, a judgmental disagreement does not constitute gross negligence.  *See* note 13

*supra*.  This is particularly true given that the discrepancy was *expected* in light of TBW's

business model.  As Freddie Mac itself alleges, TBW did *not* retain servicing rights to some of

---

[16] *See* AC ¶¶ 117, 124 (citing Ex. K, 2007 WP 5323 at DT-TBW-07E-01013004 (noting that Colonial Bank confirmed the parties' "mutual intent . . . that the transactions . . . are considered to be sale[s]")); *id.* at ¶ 123 (citing Ex. L, 2008 WP 5328 at DT-TBW-08E-5328.0002 (noting that "D&T sent a confirmation to Colonial Bank to confirm the net asset balance and liability amount as of 4/30/088, the difference being the haircut . . . .")).

the loans it sold to Colonial Bank.  *See, e.g.*, AC ¶ 140 ("TBW's business model was to *typically* retain the MSRs when it transferred the loans to Colonial" (emphasis added)); *id.* ¶ 152 (stating that TBW's business model was to "retain the servicing rights for the *vast majority* of the loans it sold") (emphasis added).  According to Freddie Mac, TBW "was originating mortgages at a rate of more than $30 billion per year and was servicing approximately 512,000 mortgages totaling more than $80 billion in unpaid principal balance."  *Id.* ¶ 25.  TBW's decision not to retain the MSRs for $1.4 billion of loans (*id.* ¶ 146), while retaining MSRs for $80 billion in loans, is entirely consistent with what Freddie Mac itself alleges TBW's business model to have been.

Furthermore, Freddie Mac admits that Deloitte reviewed third-party valuations, investigated the discrepancy and, in accordance with GAAS, made inquiries of TBW's CFO Delton de Armas, who explained it.[17]  *See id.* ¶¶ 141, 149-51.  Again, Freddie Mac merely questions whether Deloitte's efforts were "sufficient."  *Id.* ¶¶ 137, 158.  Far from demonstrating gross negligence, these allegations disprove that Deloitte "failed to exercise the slightest degree of care."  *See* Section II(A) *supra*; *cf. In re Advanced Battery Techs.*, 2012 WL 3758085, at *17, *22 (allegations that an auditor ignored "discrepancies" in company filings are insufficient to claim that "no audit at all" was performed).

**D.    Freddie Mac Fails To Plead Gross Negligence As To Deloitte's Audit Work Relating To Ocala Funding**

Regarding the receivable TBW owed to Ocala Funding—which was fully disclosed to Freddie Mac in the schedules accompanying TBW's consolidated financial statements (Ex. C at 21)—Freddie Mac alleges only that Deloitte *should have* realized that Ocala Funding's formation documents supposedly forbade the receivable.  *See* AC ¶¶ 159-70.  Again, under Florida law, this

_____

[17] Moreover, as noted above, the documents Freddie Mac chose to cite and rely upon demonstrate that TBW's explanation was consistent with Colonial Bank's confirmations, which corroborated TBW's loan sales to Colonial Bank.  *See* note 16 *supra*.

"should have realized" allegation fails to plead gross negligence.  *See* Section II(A) *supra*.

Moreover, Freddie Mac does not even allege facts supporting the allegation that Deloitte should have understood this supposed inconsistency.  Freddie Mac itself has asserted that Bank of America (not Deloitte) was hired as Ocala Funding's trustee and was responsible for ensuring and certifying Ocala Funding's compliance with its organization documents.[18]  In contrast, Deloitte was not retained to do that, or to audit Ocala Funding's financial statements; rather, it was retained to audit TBW's consolidated financial statements.  Ex. C, Deloitte Independent Auditors' Report dated July 29, 2008 at 3.[19]  As TBW's auditor, Deloitte's obligation with respect to intercompany receivables was to verify that *they eliminated upon consolidation*—and thus did not impact TBW's consolidated financial statements.  *See* Ex. O, FAS 57 at 5 (stating that "disclosure of transactions that are eliminated in the preparation of consolidated or combined financial statements is not required in those statements").  Freddie Mac does not dispute that Deloitte fulfilled this obligation.  There is no GAAS violation alleged here, much less a failure to exercise "even the slightest degree of care."  *See* Section II(A) *supra*.

### E.     Freddie Mac Fails To Plead Gross Negligence As To Deloitte's Audit Work Relating To Revenue Recognition

As to the testing of TBW's loan sales for purposes of revenue recognition, Freddie Mac simply second-guesses Deloitte's audit judgment as to the procedures applied.  AC ¶¶ 171–77 (arguing that Deloitte should have tested loans sold to Colonial Bank).  As noted above, this judgmental disagreement does not even approach the type of allegation necessary to plead gross

---

[18] *See* Ex. R, Freddie Mac's Opp'n to Bank of Am.'s Mot. to Compel Discovery, *BNP Paribas v. Bank of Am.*, No. 09-cv-9783-RWS, at 3 (S.D.N.Y. May 8, 2013), Dkt. #145 (stating that Bank of America was responsible for "certifying the state of collateral" at Ocala Funding).

[19] Ex. R, Freddie Mac's Opp'n to Bank of Am.'s Mot. to Compel Discovery at 21 ("The Company's activities under [the Ocala Funding asset-backed commercial paper facility] are monitored by a trustee.  The trustee monitors limitations and restrictions imposed by the agreement.")

negligence.  *See* Section II(A) *supra*; note 13 *supra*.  Moreover, given these allegations, Freddie Mac cannot deny that Deloitte made efforts to audit loan sales, and thus cannot be charged with lacking "even the slightest degree of care," as required.  *See id.*

As to the 2008 testing of a particular revenue account, s*ee* AC ¶¶ 184–202, Freddie Mac does not allege that the account balance was wrong as of the financial statement date, let alone materially wrong.[20]  Instead, the Amended Complaint vaguely asserts that "some" unspecified "entries" involved unspecified "fraudulent transactions."  *Id.* ¶ 191.  Freddie Mac never identifies those entries, says how big they were, explains how they were fraudulent, or even alleges that they affected the year-end account balance (and thus, the consolidated financial statements that Deloitte audited).  This vague allegation fails adequately to allege even a material error under Rule 9(b),[21] let alone the predicate for a claim of gross negligence.  *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1286 (N.D. Okla. 2007) ("An auditor's statement that it conducted an audit in compliance with GAAS, even if untrue, is not material if the company's financial statements do not materially violate GAAP . . . .").

Moreover, Freddie Mac does not allege negligence with respect to this account—much less gross negligence.  Freddie Mac does not allege that Deloitte failed to perform any required audit step, overlooked any piece of evidence received, or conducted audit procedures that

---

[20] Furthermore, Freddie Mac has greatly overstated the account balance—misleadingly focusing on the "gross" entries (*i.e.,* the various credits and debits throughout the year), *see* AC ¶ 191, most of which cancelled out by year-end (April 30, 2008), leaving a far smaller balance at the financial statement date.

[21] *See, e.g.,* *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1198 (S.D. Fla. 2013) ("Plaintiffs do not even allege how these statements are false."); *see also Kaufman*, 2011 WL 10483568, at *3-5 (dismissing for failure to plead how each alleged misrepresentation was "false" or inconsistent with "knowledge at the time"); *Schick v. Ernst & Young*, 141 F.R.D. 23, 27 (S.D.N.Y. 1992) (dismissing claims against auditor under Rule 9(b) where plaintiff "fail[ed] to allege the amount of the purported overstatement"); *In re The One Bancorp Sec. Litig.*, 135 F.R.D. 9, 14 (D. Me. 1991) (dismissing where plaintiff alleged "almost no concrete facts in support of its claim that the bank's provision for loan losses was somehow fraudulent").

violated GAAS.  Indeed, this was just one account in TBW's general ledger, and was not even a line item in the financial statements; Freddie Mac cites to no GAAS requirement that an auditor test every entry in every account—nor could they.  *See, e.g.*, Ex. S, AU 350.04 (noting that sampling can provide sufficient audit evidence); *see also* note 13 *supra; cf. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002) (allegation that an auditor "failed to closely review files" is not sufficient to claim that "no audit at all" was performed); *Goldman v. MacMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989) (allegation that auditor "should have . . . independently confirmed and verified that transactions . . . were at arm's length" was not sufficient to state fraud claim).  Instead, Freddie Mac merely complains with the benefit of hindsight that Deloitte should not have relied on management's explanations.  *See, e.g.*, AC ¶¶ 195–99.  But Deloitte was entitled to rely on those explanations, in the context of the whole body of audit evidence it accumulated.  *See* note 15 *supra.*

Finally, Freddie Mac's allegations demonstrate that Deloitte took considerable steps to understand this account, with a flurry of emails and meetings to assess and tie it to other audit procedures.  *See* AC ¶¶ 187–93.  Freddie Mac may quibble with particular questions asked or answers received, but its allegations unquestionably disprove the fundamental claim that Deloitte failed to exercise even the "slightest degree of care."  *See* Section II(A) *supra.*

**F.      Freddie Mac Fails To Plead Gross Negligence As To Deloitte's Audit Work Relating To TBW's Loan-Related Allowances**

Similarly, Freddie Mac's disagreement with Deloitte's judgment concerning TBW's allowance for loan losses does not even allege a material misstatement, much less gross negligence.  *See* AC ¶¶ 178–83.  First, Freddie Mac never alleges that the allowance was false.  As TBW management's *opinion*, the allowance was not false unless management did not

16

subjectively believe it. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (reserves for loan losses are not a matter of objective fact, but rather reflect management's opinion or judgment); *In re Colonial Bancgroup, Inc. Sec. Litig.*, No. 2:09-cv-104, 2013 WL 4788627, at *6 (M.D. Ala. Sept. 9, 2013) (to plead falsity of an opinion, a plaintiff must "'allege that the defendant did not actually believe the stated opinion'" (citation omitted)).  Here, Freddie Mac pleads no facts showing that the allowance was inadequate, much less that TBW did not believe that its allowance was adequate.

Second, even if Freddie Mac had adequately pled that TBW made a false statement, it does not adequately allege that Deloitte's audit procedures were negligent, much less grossly negligent.  An auditor's role is to assess the reasonableness of management's estimate.  *See* Ex. P, AU 342.04.  As Freddie Mac acknowledges, Deloitte performed numerous audit procedures in 2007 and 2008 to test the reasonableness of management's estimate, including reviewing (i) historical loss rates; (ii) the prior year's loss rates; (iii) the reserve for the referenced Florida condominium loans; and (iv) TBW's explanation for that reserve judgment.  *See* AC ¶¶ 179(a)-(c), 181.  Freddie Mac's factual allegations[22] establish the opposite of gross negligence—that Deloitte made a reasonable and good faith attempt to address this issue, and cannot be charged

---

[22] Moreover, the workpapers Freddie Mac chose to cite and rely upon disprove even negligence. Instead, they indicate that (i) in 2008, Deloitte confirmed that TBW's 30% reserve rate still *exceeded* the current year's actual incurred loss rate of 29.6%, even after the 11% increase Freddie Mac cites, *see* AC ¶ 179(a) (citing Ex. Q FY08 WP 6113, "Tickmark" tab, t/m {1} at 26/27 ("TBW has historically used a 30% general reserve for REO's, which is consistent with our understanding of the entity and based on previous audit testing has approximated its past loss experience.  D&T noted in the CY, that the actual loss on sold REO properties was 29.61% vs 18.46% in the PY, refer to 5516 for further detail.")); and (ii) for the Florida condominium loans, Deloitte concluded that the allowance initially recorded by TBW was too low and proposed an adjustment, which TBW recorded, to "increase loan loss reserve at 4/30/08 for Ft Myer loans" by $1.4 million from 34% to *43%*, *see* AC ¶ 179(c) (citing Ex. Q, FY08 WP 6113 tab 6 at 14/27) (reflecting increase of $1.4 million loan loss reserve to $6,578,847 on a total balance of $15,158,847)).

with failing to exhibit the "slightest degree of care."  *See* Section II(A) *supra*.

### III.  FREDDIE MAC FAILS TO PLEAD WITH PARTICULARITY CLAIMS FOR NEGLIGENT MISREPRESENTATION RELATING TO DELOITTE'S 2002, 2003, 2004, AND 2005 AUDIT OPINIONS

Because Freddie Mac's claim sounds in fraud under Florida law, Freddie Mac must plead supporting facts with the particularity demanded by Federal Rule of Civil Procedure 9(b). *Lamm*, 749 F.3d at 951 ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims."); *Kaufman*, 2011 WL 10483568, at *3-5 (dismissing negligent misrepresentation claim for failure meet pleading standards of Rule 9(b)).  Freddie Mac fails to allege with particularity any facts to support a negligent misrepresentation claim with respect to Deloitte's 2002 - 2005 audits.

First, Freddie Mac fails adequately to allege how TBW's financial statements for 2002 through 2005 violated GAAP.  *See, e.g.*, AC ¶ 82 (alleging generally that "TBW's Audited Financial Statements were materially false in numerous respects, and Deloitte failed to conduct its audits in accordance with GAAS").  Freddie Mac fails to allege any facts suggesting, much less demonstrating, how or to what extent TBW's financial statements for those years materially violated GAAP—a clear defect in a claim against an auditor.  *See* note 21 *supra*.

Second, Freddie Mac fails adequately to allege that Deloitte's audits violated GAAS.  AC ¶ 82.  Freddie Mac does nothing more than allege, in conclusory terms, that Deloitte's audit opinions from 2002 to 2005 were false.  *See, e.g.*, AC ¶¶ 8, 10, 15, 51-55, 81-82, 223, 244-46.  Freddie Mac does not identify *any* specific failures as to the 2002 - 2005 audits.  Freddie Mac alleges nothing at all about (i) the audit procedures Deloitte performed during those years; (ii) any audit procedures Deloitte was required—but failed—to perform; (iii) any knowledge Deloitte allegedly had or recklessly disregarded; or (iv) any other issues regarding Deloitte's

audit work during this period.[23]   These omissions are fatal to Freddie Mac's claim:  in similar cases, courts have dismissed claims against auditors for failure to satisfy Rule 9(b).  *See, e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.) (affirming dismissal of securities fraud claim against auditor for failure to allege the circumstances of the fraud with sufficient detail, including failing to identify specific problem loans auditor should have identified), *cert. denied*, 498 U.S. 941 (1990); *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58 (D. Mass. 1995) (dismissing securities fraud claim against auditor because "conclusory allegations that a 'proper audit' would have disclosed the false and misleading nature of defendant's loan loss reserve statements" did not satisfy pleading requirements of Rule 9(b)); *Weinberger v. Kendrick*, 451 F. Supp. 79, 82–84 (S.D.N.Y. 1978) (dismissing claims where plaintiff failed to allege the manner in which the information was false or misleading or any factual indication of the accountant's knowledge of the purportedly false statements).

The dismissal should be with prejudice.  Freddie Mac has benefitted from years of government investigations, reports, and public testimony—and discovery from Deloitte itself. *See* Turner Decl. ¶¶ 1–2.  Moreover, Freddie Mac announced that its Amended Complaint was ready to file in December, and has had three months since then to strengthen it.  Despite this history, Freddie Mac still cannot allege specific facts necessary to support its negligent misrepresentation claim for the 2002 - 2005 audits.  Dismissal with prejudice is appropriate in these circumstances and would allow the parties to focus on the core claims in the limited time remaining.  *See Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1242 (S.D. Fla. 2011)

---

[23] By contrast, Freddie Mac at least cites evidence from the 2006, 2007, and 2008 audits in support of its contention that Deloitte's clean opinions for those years constituted negligent misrepresentations.  *Compare* AC ¶¶ 112-24, 141-54, 164-66, 172-76, 179-81, 184-94 (alleging specific audit failures in the 2006, 2007, and 2008 audits) *with id.* ¶ 194 n.3 ("On information and belief, material overrides also occurred in prior years [to 2008].").

(dismissing amended complaint with prejudice because plaintiffs "already had opportunity to amend their similar initial Complaint" and "the Court has no reason to believe the third time will be a charm"), *aff'd*, 470 F. App'x 726 (11th Cir. 2012).

## CONCLUSION

As Freddie Mac has failed to seek leave to amend, the Court should strike Freddie Mac's proposed Amended Complaint.  In the alternative, Freddie Mac's request for punitive damages should be struck or dismissed with prejudice and its negligent misrepresentation claim as to Deloitte's 2002 - 2005 audit opinions should be dismissed with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Deloitte respectfully requests a hearing on this motion, based on the magnitude of Freddie Mac's claim and complexity of the issues presented.  Deloitte estimates that such a hearing will require an hour of the Court's time.

Dated: Miami, Florida
March 9, 2015

PODHURST ORSECK P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382

By      _/ s/  Peter Prieto_____
        Peter Prieto, Esq.
        Florida Bar No. 0501492
        Email: pprieto@podhurst.com
        John Gravante III, Esq.
        Florida Bar No. 617113
        Email: jgravante@podhurst.com
        Matthew Weinshall, Esq.
        Florida Bar No. 84783
        Email: mweinshall@podhurst.com

        LATHAM & WATKINS LLP
        Miles N. Ruthberg, Esq. admitted *pro hac vice*
        New York Bar No. 4452280
        Email: miles.ruthberg@lw.com
        885 Third Avenue
        New York, NY 10022-4834
        Telephone: (212) 906-1200
        Facsimile: (212) 75l-4864

        Peter A. Wald, Esq. admitted *pro hac vice*
        California Bar No. 85705
        Email: peter.wald@1w.com
        505 Montgomery Street, Suite 2000
        San Francisco, CA 94111-6538
        Telephone: (415) 395-0600
        Facsimile: (415) 395-8095

        *Attorneys for Defendant Deloitte & Touche LLP*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record for Plaintiff Federal Home Loan Mortgage Corporation on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/  Peter Prieto*
Peter Prieto

**SERVICE LIST**

| | |
|---|---|
| Isaac J. Mitrani<br>    imitrani@mitrani.com<br>Pamela Chamberlin<br>    pchamberlin@mitrani.com<br>MITRANI, RYNOR, ADAMSKY &<br>TOLAND, P.A.<br>301 Arthur Godfrey Road<br>Penthouse<br>Miami Beach, FL 33140<br>Telephone: 305.358.0050 | Mike McKool<br>    mmckool@mckoolsmith.com<br>Lew LeClair<br>    lleclair@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>300 Crescent Court, Suite 1500<br>Dallas, TX 75201<br>Telephone: 214.978.4002<br>Facsimile: 214.978.4044 |
| Paul D. Moak<br>    pmoak@mckoolsmith.com<br>Joshua Newcomer<br>    jnewcomer@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>600 Travis Street, Suite 7000<br>Houston, Texas 77002<br>Telephone: 713.485.7354<br>Facsimile: 713.485.734 | Kyle Lonergan<br>    klonergan@mckoolsmith.com<br>James Smith<br>    jsmith@mckoolsmith.com<br>MCKOOL SMITH, P.C.<br>One Bryant Park, 47th Floor<br>New York, NY 10036<br>Telephone: 212.402.9400<br>Facsimile: 212.402.9444 |
| George Kielman<br>Managing Associate General Counsel<br>    George_kielman@freddiemac.com<br>Scott Walker<br>Associate General Counsel<br>    Scott_walker@freddiemac.com<br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION<br>8200 Jones Branch Drive, MS 202<br>McLean, VA 221 02<br>Telephone: 703.903.2640<br>Facsimile: 703.903.3691 | |