UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-cv-23713-UU

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

    Plaintiff,

v.

DELOITTE & TOUCHE LLP,

    Defendant.
_____/

**FREDDIE MAC'S REPLY IN SUPPORT OF *DAUBERT* MOTION
TO EXCLUDE TESTIMONY OF CHRISTOPHER CULP [DE 126]**

## SUMMARY

Deloitte's defense of its expert, Christopher Culp, substitutes rhetoric for substance. Deloitte accuses Freddie Mac of "gross" and "extreme" mischaracterizations of Culp's opinion – when, as discussed below, no such mischaracterizations exist. Deloitte claims that our *Fabre* argument, *i.e.*, that no tort duties ran to Freddie Mac, is "an untenable view of the law" – when another district court, recently confronted with the identical Ocala Funding facility, found that only contract duties existed.

In a notable retreat, Deloitte proposes that Culp's testimony about the borrowing-base test could merely "explain highly-technical terms in a specialized industry" to the jury. Culp's report, however, ventured much further. Regardless, if all Culp is going to do is explain how the asset-backed commercial paper industry generally worked, without reference to the particular contract at issue here, then Culp's opinion is irrelevant.

As to Culp's opinions about improper transfers and "early purchase facility" ("EPF") loan purchases, they too require no economic expertise and are improper. Regarding transfers, Deloitte insists that Culp conducted a "rigorous analysis" of transfers out of the collateral account – but Culp admitted at deposition that he simply adopted the criteria that TBW's bankruptcy attorneys used in their "Reconciliation Report" for which accounts were improper, and tallied up the corresponding wire transfers (reaching exactly the same total as the bankruptcy attorneys had). As for the loan purchases, Culp attaches a brand new opinion that he signed on December 21, 2015, which is far too late for this case. Regardless, that opinion simply highlights discovery documents supporting Deloitte's argument that Culp purportedly "found" and "identified." Such an "opinion" is more like a preview of counsel's closing argument and does not pass muster under *Daubert*.

1

## DISCUSSION

**I.     Culp's opinion is irrelevant because B of A is not a proper *Fabre* defendant.**

Deloitte concedes that Culp's testimony is only relevant if B of A is a proper *Fabre* defendant.[1] Freddie Mac has established that B of A is not a proper *Fabre* defendant and incorporates those arguments made in our contemporaneous reply in support of summary judgment at pages 3-6, 8-9.  Additionally, we point out that Deloitte offers absolutely no support for its illogical argument that, even though Freddie Mac suffered (and claims) no losses from its brief 2007 holding of Ocala Funding commercial paper, this episode somehow triggered unspecified "other duties" to Freddie Mac "as an Ocala investor during this time," which "allegedly harm[ed] Freddie Mac" for the balance of the period that Ocala Funding existed (2005-2009).[2]

**II.    Culp's opinions about other structured finance facilities "generally" are irrelevant to interpreting the borrowing-base test in this particular contract.**

Deloitte's opposition argues that Culp should be allowed to opine about "[s]tructured finance facilities … *generally*" and the functions that a trustee, "which is *usually* a large banking institution," "*generally*" performs, in order to attract "*typical*" investors.[3]  Deloitte's opposition does not establish how testimony about these "general," "usual" and "typical" practices would be helpful to the jury in interpreting the unambiguous terms of the particular unambiguous Ocala Facility contracts that Deloitte seeks to place at issue.

---

[1] DE 191:12-13.
[2] DE 191:14.
[3] DE 191:7-8 (emphasis added).

Generalities aside, Deloitte admits that the borrowing-base test is "set forth in the security agreement."[4] Culp conceded that the security agreement was ***unambiguous***.[5] Deloitte does not dispute Culp's concession.[6] With an unambiguous contract, there is no need for any parol evidence.[7] Such parol evidence would include Culp's testimony about industry practice generally as well as his interpretation of Deloitte's long list of extra-contractual documents from "this case and related prior litigation," including an email asking B of A to "mind the store" and depositions of B of A employees taken in other lawsuits.[8] Accordingly, Deloitte's string cite to cases admitting expert parol evidence of industry usage[9] is irrelevant because all of those cases involved ***ambiguous*** contracts.[10]

Because the test is only what the security agreement provides, Deloitte's response confounds reason in repeatedly insisting that the borrowing-base test is a "solvency

---

[4] DE 191:8.

[5] DE 126:10; Culp Depo. Tr. at 131-132 ("Q. Is there any ambiguity in the language of section 5.03 of the Security Agreement? [Objection.] A. I haven't noticed any.").

[6] *Cf.* DE 191:17.  Deloitte does chide, tautologically, that the test must have been "ambiguous enough for Bank of America to misinterpret it for more than four years." DE 191:17.

[7] *Cf. SR Intern. Bus. Ins. Co. v. World Trade Center Properties, LLC*, 467 F.3d 107, 117-18 (2d Cir. 2006) (cited by Deloitte, DE 191:16, but involving undefined insurance-contract term ("occurrence") lacking uniform meaning under New York law, that the Second Circuit therefore determined to be "ambiguous").

[8] DE 191:10, 15.

[9] DE 191:16.

[10] *SR Intern. Bus. Ins. Co.*, 467 F.3d at 117-18 (discussed *supra* note 7); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (at bench trial, district court admitted expert testimony about the specialized meaning in the industry of an undefined contract term – "same or related origins to same or related destination" that was ambiguous as to whether it referred to origins and destinations that were related by "geography" or related according to railroad tariffs); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (contract's use of term "cost" was ambiguous); *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1375 (8th Cir. 1977) (expert was allowed to testify about "minimum standards of [railroad] car building practice" concerning whether the "mounting surface of a railcar's center plate should be flat" in light of contract's ambiguous requirement that a railroad car should be built in a "workmanlike manner").

3

equation," as if that shorthand reference eliminates the need to follow the precise instructions that the security agreement gives for calculating the test.[11] Divorcing the terms of the contract from the test in this manner only serves to confuse the issues and, likely, the jury.

Likewise unhelpful is Deloitte's cherry-picking from our expert Mason's deposition, claiming that he conceded that the test is "a solvency test *of some sort*."[12] Mason's qualifying words ("of some sort") are crucial to understanding our point that the borrowing-base test is precisely the "sort" of solvency test that the contract terms in the security agreement specifically describe.  Culp's re-characterizing and over-simplifying the test as a generic "solvency test" – by subtracting contract-required variables and adding contract-excluded variables, just because Culp personally believes it would make sense "[a]s a matter of economics"[13] – grotesquely distorts the contract and will confuse the jury.

Perhaps recognizing that Culp is not entitled to give legal opinions about the contracts, Deloitte makes a telling last-ditch argument that "regardless of whether it touches on legal issues," Culp's testimony would help the jury with "unfamiliar and complex terms and concepts."[14]  There is no "complex case" exception, however, that allows experts to usurp the judge's role of interpreting the law.[15]

---

[11] *Cf.* DE 191:9 ("solvency equation," "representing that Ocala was solvent," "designed to serve as a solvency test," and "certify[ing] that it was solvent").
[12] DE 191:17 (emphasis added and quotation marks omitted).
[13] Culp Report, ¶ 98.
[14] DE 191:17.
[15] *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir.1990) ("An expert … may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

4

Indeed, the cases Deloitte cites in support of such an exception contradict this position. Thus, the Fourth Circuit, in *United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), specifically pointed out that "when a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge and, coming from the witness, will be of little assistance to the jury." *Id.* at 175. Similarly and contrary to Deloitte's parenthetical, the district court in *U.S., ex rel. Palmer v. C & D Techs., Inc.*, 2015 WL 4470291 (E.D. Pa. July 22, 2015), found that while an expert could testify regarding what someone in the defendant's position might know about "industry custom," the expert may not testify as to the legal requirements or the legal significance of a contract's language. *Id.* at *6. Opposite to what Deloitte wants for Culp,[16] the *Palmer* court admonished the expert not to "touch[] upon legal issues" and "not to stray into the realm of legal conclusions about contractual obligations." *Id.*

Deloitte is also off base in arguing that "Culp's opinions are no different than the testimony the Eleventh Circuit held was properly admitted in *Maiz* [*v. Virani*, 253. F.3d 641 (11th Cir. 2001)].[17] In *Maiz*, a forensic accountant's testimony incidentally explained "reasonable assumptions he was asked to make by counsel" about the "requirements of the applicable contracts." *Id.* at 667. The Eleventh Circuit applied a "harmless error" analysis, *id.* at 668 ("even assuming that some small portion of [the expert's] testimony should in hindsight have been excluded"), a standard that is not relevant in a trial court for evaluating testimony. Regardless, there is a meaningful difference between an expert who incidentally cites assumptions provided by counsel

---

[16] DE 191:17.
[17] DE 191:16.

about the contracts, and an expert who, like Culp, bases his entire opinion about the borrowing-base test on his view of how the contracts should have been executed.

Deloitte's remaining citations on this point are similarly unavailing. The Tenth Circuit's decision in *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), does not help Deloitte since that case reversed the judgment because the expert's trial testimony about legal issues "allowed the expert to supplant … the court's duty to set forth the law." *Id.* at 808. The district court's decision in *Middle Market Fin. Corp. v. D'Orazio*, 2002 WL 31108260 (S.D.N.Y. Sept. 23, 2002), is also readily distinguishable because it involves a legal malpractice claim. There, the court allowed the expert to testify about legal standards because the "state of the law at the time of the alleged malpractice" was relevant to determining whether the defendant had "depart[ed] from acceptable professional standards." *Id.* at *7. Indeed, the court expressly recognized that "expert witnesses are not ordinarily permitted to testify to matters of domestic law." *Id.*

For all these reasons, Culp's interpretation of the borrowing-base test violates *Daubert* and should be excluded.

### III. Culp's opinions about improper cash transfers "regurgitate" the bankruptcy report.

In our motion, we pointed out how Culp adopted, without any independent analysis, the criteria of the "Reconciliation Report" in the TBW bankruptcy case, to determine which transfers were improper.[18] In response, Deloitte's opposition brief claims that Culp and his team made a "meticulous analysis" of those transfers, consisting of a "detailed review of Ocala's wire transfer activity records."[19] To gild the lily,

---

[18] DE 126:17-18.
[19] DE 191:19-20.

Deloitte even attaches a new affidavit from Dr. Culp, pointing out all the work he and his team did to add up the numbers from these bank records.[20] Remarkably, after all this work, Culp and his team arrived at *precisely the same amount* of "improper cash transfers" as the debtor's lawyers did in their Reconciliation Report.[21]

In any event, Culp's new declaration misses the point. The Culp team's painstaking data entry of the bank records into an Excel spreadsheet does not require any economic expertise. Typing in numbers, regardless of how many of them there are,[22] does not change the fact that Culp failed to conduct an independent determination of what categories of transfers were improper and why. Rather, he blindly accepted the conclusions of lawyers from another lawsuit. This requires no expertise and is the opposite of the rigor required by an academic in the field of economics.[23]

In short, if Culp and his team are merely adding up numbers from bank records, they are merely making a "summary . . . or calculation to prove the contents of voluminous writings" under Fed. R. Evid. 1006. The cases Deloitte cites in favor of permitting Culp to testify that he added up numbers are either cases concerning the admission of summary evidence under Federal Rule of Evidence 1006, or completely inapposite.[24] If Culp were merely to testify as a summary witness under Rule 1006, that

---

[20] *Id.* at 20 (citing "Exhibit H," Culp Declaration, dated Dec. 21, 2015, DE 191-7).
[21] *Compare* Reconciliation Report at 82, Table 10 (listing ten categories of improper transfers totaling to ***$2.171 billion***), *with* Culp Report, ¶ 108 (finding "improper and unauthorized cash transfers out of the Ocala collateral account to the nine account types indicated for a cumulative total of ***$2.171 billion***" (emphasis added)).
[22] DE 191:20 (boasting of "meticulous analysis of thousands of wire transfers").
[23] DE 126:18.
[24] DE 191:20-21. *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012) (admitting testimony under Rule 1006); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504, 507 (S.D.N.Y. 2015) (citing *Gill* for this same proposition and expressly cautioning that "any testimony that simply regurgitates

7

he added up voluminous bank statements, the impression upon the jury would be far different from Culp's contemplated regurgitation of the Reconciliation Report.[25]

### IV.     Culp's Early Purchase Facility Testimony is Late and Irrelevant.

Deloitte claims that Culp should be able to testify that B of A purchased loans that were supposed to collateralize the facility.[26] In its opposition memorandum, Deloitte offers that Culp "identified" and "found" new documents neither mentioned in his report nor in his revised report.[27] In support, Deloitte cites to Culp's brand new affidavit, containing new opinions on this issue.[28] This supplemental opinion, issued two months after Culp's revised report and five weeks after the close of discovery, violates this Court's pre-trial order and should be excluded.[29] Aside from being too late, Culp's pointing out documents to the jury that he supposedly "found" and "identified," is not "expertise." As established in one of the cases that Deloitte itself cites, such testimony

---

evidence already in the record in narrative form … is similarly excluded"). Deloitte's citation to *Thomas v. Hubtex Maschinenbau GmbH & Co KG*, 2008 WL 4371977 (M.D. Ga. Sept. 23, 2008), is inapposite. That case did not involve a summary or tally of figures from voluminous documents, but involved expert testimony in a personal injury case about the proper functioning of a stop bolt in a sideloader machine that injured the plaintiff's foot.

[25] *See Kaufman v. Pfizer Pharmaceuticals, Inc.*, 2011 WL 7659333, at *9 (S.D. Fla. 2011) (Ungaro, J.) (citing prior exclusion of expert's opinion when proposed testimony was "riddled with conclusory statements lacking either analysis or explanation; improperly touche[d] on issues well beyond [her] qualifications; and at times, merely regurgitate[d] factual information that is better presented directly to the jury rather than through testimony of an expert witness").

[26] DE 191:22.

[27] DE 191:21.

[28] DE 191:21 (citing "Exhibit H," Culp's declaration, dated December 21, 2015, DE191-7).

[29] DE 88:1 (setting November 13, 2015 as the deadline for expert discovery and ordering that "**ALL EXPERT DISCOVERY MUST BE COMPLETED BY THE DISCOVERY CUT-OFF**" (emphasis in original)).

8

should be excluded because it "offers nothing more than what lawyers for the parties can argue in closing arguments."[30]

## CONCLUSION

In interpreting the Ocala Facility contracts, Culp pushes beyond the proper limits of an economics expert, well into the province of this Court.  In summarizing transfers out and Bank of America's alleged purchase of Ocala collateral, Culp provides no actual expertise and indeed, regurgitates the unexamined opinions of lawyers from another case.  Deloitte's opposition uses rhetoric and hyperbole to disguise these problems.  Far from being cured, these problems would confuse the jury into crediting Culp's personal views just because he has been accepted by the Court as "an expert."

WHEREFORE, Freddie Mac respectfully moves to preclude the testimony of Christopher Culp.

                                          Respectfully submitted,

                                          LEWIS TEIN, P.L.
                                          3059 Grand Avenue, Suite 340
                                          Coconut Grove, Florida 33133
                                          Tel: (305) 442 1101
                                          E-mail: mtein@lewistein.com

---

[30] *Thomas v. Hubtex Maschinenbau GmbH & Co KG*, 2008 WL 4371977, at *3 (M.D. Ga. Sept. 23, 2008) (quotation marks omitted).

By:    */s/Michael R. Tein*
       MICHAEL R. TEIN
       Florida Bar No. 993522

       Paul D. Moak
       pmoak@mckoolsmith.com
       Joshua Newcomer
       jnewcomer@mckoolsmith.com
       MCKOOL SMITH P.C.
       600 Travis Street, Suite 7000
       Houston, TX 77002
       Phone: (713) 485-7302

       Kyle A. Lonergan
       klonergan@mckoolsmith.com
       James H. Smith
       jsmith@mckoolsmith.com
       MCKOOL SMITH P.C.
       One Bryant Park, 47th Floor
       New York, NY 10036
       Phone: (212) 402-9400

       Mike McKool
       mmckool@mckoolsmith.com
       Lewis T. LeClair
       lleclair@mckoolsmith.com
       MCKOOL SMITH P.C.
       300 Crescent Court, Suite 1500
       Dallas, TX 75201
       Phone: (214) 978-4000

       George A. Kielman
       george_kielman@freddiemac.com
       Scott L. Walker
       scott_walker@freddiemac.com
       Michael Stauber
       michael_stauber@freddiemac.com
       FEDERAL HOME LOAN MORTGAGE
       CORPORATION
       8200 Jones Branch Drive, MS 202
       McLean, VA 22102
       Phone: (703) 903-2640

       *Attorneys for Plaintiff Federal Home Loan Mortgage Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 31, 2015, a true and correct copy of the foregoing was served on all counsel or parties of record on the following service list via CM/ECF.

                     /s/Michael R. Tein
                     MICHAEL R. TEIN

## SERVICE LIST

| | |
|---|---|
| Peter Prieto, Esq.<br>PPrieto@podhurst.com<br>John Gravante III, Esq.<br>JGravante@podhurst.com<br>Matthew Weinshall, Esq.<br>MWeinshall@podhurst.com<br>Podhurst Orseck P.A.,<br>25 West Flagler Street, Suite 800<br>Miami, FL  33130 | Miles N. Ruthberg, Esq.<br>miles.ruthberg@lw.com<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY  10022-4834 |
| Peter A. Wald, Esq.<br>peter.wald@lw.com<br>Latham & Watkins, LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA  94111-6538 | ***Attorneys for Defendant Deloitte & Touche LLP*** |